IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 6, 2018 Session

**ELIOT RUSSELL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 13-02746    John W. Campbell, Judge**

———————————

**No. W2017-02262-CCA-R3-PC**

———————————

The Petitioner, Eliot Russell, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief related to his convictions for attempted rape of a child and aggravated sexual battery, for which he is serving an effective twenty-four-year sentence.  On appeal, he contends that the post-conviction court erred in (1) excluding expert testimony and (2) denying his ineffective assistance of counsel claim.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Stephen C. Bush (at hearing and on appeal), District Public Defender; Barry W. Kuhn (on appeal) and Kaycee Roberts (at hearing), Assistant District Public Defenders, for the appellant, Eliot Russell.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; Danielle McCollum and Leslie Byrd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions relate to sexual abuse of his former girlfriend's daughter.  The abuse began when the victim was in the fourth grade and continued until the victim was thirteen years old and in the eighth grade.  *State v. Eliot Russell*, No. W2014-01212-CCA-R3-CD, 2015 WL 5813679, at *1-2 (Tenn. Crim. App. Oct. 6, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016).  In the appeal of the convictions, the Petitioner challenged the sufficiency of the evidence of the attempted rape of a child conviction and the imposition of maximum, consecutive sentences.  This court

determined that the appellate issues lacked merit and affirmed the convictions, and the supreme court denied the application for permission to appeal. *See id.* at *4-7.

Thereafter, the Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed. At the post-conviction hearing, trial counsel testified that the Petitioner had been charged with rape of a child and aggravated sexual battery. She said she met with him once or twice while he was in custody and about three times after he was released on bond. She said that she met with the Petitioner and his family members to prepare for the trial and that she spoke with the Petitioner by telephone "a lot." She said another attorney assisted her with the case but did not recall if the other attorney was present for meetings with the Petitioner.

Trial counsel testified that she and the Petitioner discussed trial strategy, including the Petitioner's theory that the accusations were in retaliation for his having been unfaithful while he dated the victim's mother. She said the Petitioner theorized that the victim's mother "was putting the child up to it." Counsel said the Petitioner told her that he left the victim's mother and moved in with his new girlfriend and that the Petitioner and his new girlfriend posted their wedding invitation on Facebook. Counsel said the Petitioner gave her printouts of Facebook posts containing photographs of the victim in provocative poses. Counsel said that many of the Petitioner's witnesses were individuals who would say they could not believe the Petitioner would have committed the offenses and that he had been a father figure to the victim. Counsel said she and the Petitioner discussed the Petitioner's differential treatment of the victim, as compared with the victim's sister, the latter of whom "may have been a problem child." Counsel identified two documents, which were received as exhibits. She said she had seen them previously and thought she saw them during a trial strategy meeting with the Petitioner. She thought the Petitioner's wife might have provided her with the documents. Counsel described one of the documents as "a Facebook photo of I guess when they got engaged or married." She said the other document contained a message from the victim's mother to the Petitioner's wife, which had been sent through the victim's Facebook account.

Trial counsel testified that she reviewed a transcript of the victim's forensic interview, which she said she reviewed with the Petitioner. She said no video recording of the interview was provided during discovery. She did not think that if she had been provided with a video recording, she would have discussed retaining an expert with the Petitioner. She noted that the forensic interview contained some favorable information for the defense and noted the absence of any physical injury which would support the occurrence of a rape. She said that they discussed the possibility of developing an alibi for some of the allegations based on the Petitioner's work schedule but that she was unable to verify the Petitioner's schedule because the employer was no longer in business. She noted that the preparer of the presentence report had been unable to verify the Petitioner's employment for this reason. Counsel said that she tried to confirm when

the offenses were alleged to have occurred but that it was difficult because they were identified by reference to the victim's grade or when another person in the household went to the mailbox or the store and not identified by date and time.

Trial counsel testified that she investigated reasons the victim's mother might coerce the victim to fabricate the offenses. She noted that cross-examination of a child victim must be done carefully. Counsel said that the only reason she discovered which might explain why the victim would lie was that the Petitioner was unfaithful to the victim's mother. She noted, however, the evidence that when the victim asked why the Petitioner was committing the offenses, the Petitioner stated it was so he would not "cheat on" the victim's mother. Counsel said she was aware the State might call the victim's mother as a rebuttal witness. Counsel said she spoke with the victim's mother but decided not to call her as a witness. Counsel said that the victim's mother was emotional, which might create sympathy for the victim, and that the victim's mother was able to explain "how some of the things unfolded." Counsel said the victim's mother explained that the motivation for the allegations had not been the Petitioner's unfaithfulness and that the victim had felt free to tell the victim's mother what had occurred once the Petitioner was out of the home. Counsel said the victim reported in the forensic interview that she had seen the Petitioner assault the victim's mother. Counsel said she had been aware that the victim's mother had been charged with assault previously but did not know if the charges had been dismissed. Counsel did not think her trial strategy would have changed if she had learned the victim's mother had assaulted the Petitioner's new girlfriend. Counsel did not recall the Petitioner's new girlfriend ever having informed her of threats from the victim's mother.

Trial counsel testified that the victim's disclosure occurred when the victim and the victim's mother were at a hospital because the victim had been in a fight. Counsel said the victim asked the victim's mother if she had ever contracted a sexually transmitted infection (STI), the victim's mother said the Petitioner had given her one, and the victim disclosed the offenses. Counsel said she did not pursue a theory that the victim had fabricated the allegations in order to divert attention from the fight that had occurred. Counsel said the Petitioner denied having ever had an STI. Counsel said that the Petitioner signed a "HIPPA form" but that he never identified any doctors for counsel to contact about whether he had ever had an STI. Counsel agreed that state law required medical personnel to report STI diagnoses and said she did not contact the health department to search for the Petitioner's history relative to any STI reports. She said she did not know when the victim's mother claimed to have contracted an STI from the Petitioner and that counsel went directly to the Petitioner about the allegation. Counsel acknowledged she did not seek a subpoena of the victim's mother's medical records but noted that the victim had negative STI test results. Counsel acknowledged that she might have improved the State's case if she had obtained the Petitioner's medical records and learned he had been diagnosed with an STI. She said evidence that the Petitioner had an

STI could have bolstered the proof about the victim's disclosure of the offenses. Counsel agreed she had decided not to "take that gamble" as a matter of strategy.

Trial counsel testified that she and the Petitioner discussed whether he would testify. She said she told him the decision was his. She said she advised the Petitioner that he would be subject to cross-examination about his prior felony conviction.

Trial counsel agreed that the victim's sister testified as a State's witness that she "observed certain things between" the victim and the Petitioner. Counsel did not recall whether she cross-examined the victim's sister about a prior statement during a Department of Children's Services investigation that the victim's sister had never seen anything unusual. Counsel thought she cross-examined the victim's sister about the sister's claim that she and the victim were treated differently. Counsel noted that the victim alleged the misconduct occurred when no one other than herself and the Petitioner were present. Counsel said she was concerned about questioning the victim's sister about the differential treatment the victim's sister claimed to have received because she was concerned about the victim's more favorable treatment showing that the Petitioner was "grooming" the victim for sexual abuse.

Trial counsel said the defense theory was that the Petitioner had not committed the offenses. She said she focused on the lack of physical evidence. She agreed that the victim's age was an essential element of the offense of rape of a child. She said her recollection was that the victim testified she was twelve years old at the time of the offense on which the State elected to proceed. Counsel said that if the trial transcript showed that the victim was "probably twelve, thirteen," this would "[n]ot necessarily" have made a difference in the trial strategy. Counsel thought that the discovery showed that the victim "was definitively twelve" and that the victim testified she "was probably twelve." She said the question of the victim's age was for the trier of fact to determine. Counsel was asked if she thought a defense attorney should object on the basis of misstatement of fact if a victim in a rape of a child case testified that she was "probably twelve, thirteen" but the prosecutor stated in closing argument that the undisputed proof showed the victim was age twelve. Counsel said she did not necessarily think a defense attorney should object in this situation. Counsel said the jury heard the proof and was instructed that the closing arguments were not evidence. Counsel said closing argument can be an interpretation of how a party views the evidence.

Trial counsel testified that the Petitioner was convicted of attempted rape of a child, a lesser-included offense of the charged offense of rape of a child. Counsel said she did not represent the Petitioner in the appeal of the convictions. She agreed that the Court of Criminal Appeals concluded that the evidence was sufficient to support the attempted rape of a child conviction, which included the element of the victim's age. Counsel agreed that the evidence relative to the victim's age included the victim's

testimony about her age, as well as the evidence of her grade in school, the identity of the school she attended, and other circumstances in her life.

Shelby County Health Department employee Phyllis Crump testified that no STI diagnosis records relative to the victim's mother or the Petitioner existed in Shelby County or the State of Tennessee. She agreed that a doctor might fail to report an STI diagnosis. She said she did not search for records in other states. She said that the diseases which were "reportable" were HIV, syphilis, gonorrhea, and chlamydia. She said trichomoniasis was an STI but was not reportable.

The victim's mother testified that she had been involved with the Petitioner "off and on" for eight years, ending in March 2012. She said she ended the relationship after learning that the Petitioner had also been involved for three years with the woman to whom he was now married. She said that she and the Petitioner had broken up for about a week in January 2012. The victim's mother said that after the March breakup, the Petitioner called and threatened her, that she did not call the police because she was not scared, that she contacted the Petitioner's new girlfriend through Facebook, that she and the new girlfriend spoke by telephone, and that the new girlfriend "started spilling the beans" about her relationship with the Petitioner. The victim's mother said that she never looked at the Petitioner's new girlfriend's Facebook page after sending her a message in March 2012 and that she had been unaware of the new girlfriend's May 2012 Facebook post regarding the Petitioner's and the new girlfriend's engagement.

The victim's mother testified that she was enrolled in a certified medical assistant course from April through December 2012. She said that on June 7, 2012, she took the victim to a hospital for treatment of an eye injury the victim sustained in a fight with the victim's cousin. She said that while they were waiting for the victim to be treated, she had the victim assist her with flashcards the victim's mother was using to study for a test on STIs. The victim's mother said that the victim asked if the victim's mother had ever had an STI, that the victim's mother replied that the Petitioner had given her trichomoniasis, and that the victim looked "like she had seen a ghost." The victim's mother said the victim asked if the Petitioner received medical treatment. The victim's mother said the victim was tearful and said the Petitioner had been touching her. The victim's mother said she told a nurse practitioner who was treating the victim for the eye injury about the sexual abuse, that the victim's mother requested STI testing for the victim, and that the police investigated the allegations.

The victim's mother testified that she had the STI in approximately 2011, that she received treatment at "Getwell Family Medical and Delta," and that she had been monogamous when she was in a relationship with the Petitioner.

The victim's mother acknowledged that she had a prior assault conviction. She stated that it was related to an incident in which her ex-husband's wife pulled a gun on her.

The Petitioner's wife testified that she began dating the Petitioner in the "[b]eginning of January 11" and that they had been married for almost five years. She said she had received text messages from the victim's mother asking if the Petitioner was at the Petitioner's wife's home and if the Petitioner was "talking to" his wife. The Petitioner's wife said she received a Facebook message from the victim's mother and called her. The Petitioner's wife stated that during the Petitioner's trial, she had seen the victim's younger sister crying and heard her say she "didn't want to come in." The Petitioner's wife said she did not know "if one of them had told her to say something."

Leticia Cole, a forensic interviewer from the Memphis Child Advocacy Center, testified that she was trained to use open-ended questions to avoid suggesting an answer to a child who was an alleged victim of sexual abuse, that she interviewed children as quickly as possible after receiving a report of alleged abuse, and that the child's age and developmental ability were relevant factors in conducting an interview. Ms. Cole said that it was sometimes harmful for a child to talk to an untrained person but that it depended on the child.

Ms. Cole testified that she conducted the victim's forensic interview. She agreed that the victim stated she had talked to an aunt and a cousin about the sexual abuse. She agreed that the victim's family members had commented to the victim about the Petitioner's conduct. She acknowledged that statements by others could impact a child's statement about alleged sexual abuse but said any effect depended on the child.

The Petitioner testified that he, his wife, and his mother retained trial counsel. He said he met with counsel "[m]aybe twice" in addition to when he made payments. He said they discussed trial strategy "[m]aybe on one occasion." He said he gave counsel his work history and schedule in order for her to investigate whether he could have committed the offenses when they were alleged to have occurred. He said his employer was still in business when he gave the information to counsel. He said he also provided counsel with social media messages for use in the defense. He said the messages were from the victim's grandmother inquiring where the Petitioner was and who he was with.

The Petitioner identified his wife's Facebook post containing a photograph of her engagement ring. He said he provided it to trial counsel because it showed the timeline of the engagement occurring before the allegations were made. He said the victim's grandmother thought the victim's mother should be the one who was engaged because of the length of the Petitioner's relationship with the victim's mother. He said counsel told him she would use the Facebook post if he could get any additional evidence "to go with

it." He said, however, that counsel did not use the Facebook evidence at trial and did not argue his theory to the jury or explain why she had not used his theory. He agreed that counsel's theory was that the offenses did not occur but that she did not offer a theory why the allegations had been made.

The Petitioner testified that the victim had at least three or four inconsistencies in her trial testimony, although he did not specify them. He said the victim testified about abuse at three apartment complexes. He said she testified about her age as being "[t]welve or 13" and being in the seventh grade but not stating a specific date for an incident at Flairwood Apartments. He said that counsel did not argue in her closing argument that the victim could not recall her age for the incident at Flairwood Apartments, and he agreed that the victim's age would have made the difference between conviction and acquittal. He said that he asked counsel about this but that she said the victim's age did not matter without explaining her rationale.

The Petitioner testified that he spoke with counsel from the beginning about calling the victim's mother as a witness. He said that, based upon their last strategy meeting a week or two before the trial, he understood that counsel planned to call the victim's mother as a witness. He said counsel "asked for" the victim's mother but that the victim's mother never came into the courtroom. He said counsel stated that the victim's mother was too hysterical to bring into the courtroom. He agreed that counsel had not wanted the jury to see the victim's mother crying and having a breakdown on the stand. He said that the victim's mother's testimony would have shown that the allegations had been fabricated and that the victim's mother was angry and vindictive. The Petitioner stated that he told counsel the victim's mother had beat up her ex-husband's wife when the victim's mother was angry at her ex-husband. He said that counsel did not investigate this and that she did not discuss retaining a defense forensic expert.

During the post-conviction hearing, the parties referred to the record of the conviction proceedings, and the post-conviction court considered its contents in ruling on the post-conviction claims. The record of the Petitioner's previous appeal reflects the following questioning of the victim at the trial:

[Q.] . . . [You] told us that when these things were happening at Flairwood you were in the 7th grade, is that right?

A. Yes, ma'am.

Q. How old were you in the 7th grade?

A. I was probably about twelve, thirteen.

-7-

Q.    Twelve. . . .

The trial transcript also reflects that trial counsel argued in closing argument that the Petitioner did not commit the offenses, that the victim's allegations were factually implausible, that no physical evidence corroborated the victim's allegations, that the victim never testified that penetration occurred, and that the facts showed the victim's mother was "a scorned lover."  The transcript reflects, as well, that the victim's birthdate was August 10, 1998 and that she was in the tenth grade and fifteen years old when the Petitioner's March 2014 trial occurred.

After receiving the evidence, the post-conviction court denied relief.  This appeal followed.

# I

## Evidentiary Ruling

The Petitioner contends, first, that the post-conviction court erred in excluding testimony of defense experts.  Although the Petitioner did not make an offer of proof at the hearing, we glean from the discussion on the record that the Petitioner sought to offer the testimony of two criminal defense attorneys to testify about the standard of performance required of an attorney in a child sexual abuse case.  The State contends that the post-conviction court did not abuse its discretion in excluding the evidence.  We agree with the State.

Regarding the admissibility of expert testimony, Tennessee Rule of Evidence 702 provides, "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Whether to admit expert testimony is within the sound discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993).  A trial court's ruling will be reversed only if the lower court abused its discretion, which requires a showing that the court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'"  *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

The record reflects that the post-conviction court was unconvinced that expert testimony would substantially assist it as the trier of fact.  The judge noted his own experience teaching trial advocacy for almost twenty years, training with other judges,

training prosecutors, and training military attorneys who prosecuted and defended child abuse cases. Thus, the court concluded that the proposed expert testimony was inadmissible.

Upon review, we conclude that the Petitioner has not shown that the post-conviction court's ruling was an abuse of its discretion. The post-conviction judge, who was presiding over a court with jurisdiction of criminal cases, noted his own knowledge and experience in the relevant fields of criminal prosecution and defense. *See Howell v. State*, 185 S.W.3d 319, 338 (Tenn. 2006) (holding that the post-conviction court did not abuse its discretion in excluding expert testimony of a criminal defense attorney regarding an ineffective assistance of counsel issue in which the court was able to rely upon its own knowledge of the standard of performance for criminal defense attorneys). The Petitioner had the burden of establishing the admissibility of the evidence. He did not make an offer of proof consisting of testimony, an affidavit, or other evidence to show how the proposed testimony was necessary to substantially assist the trier of fact, and no issues unique to this case which required specialized knowledge beyond that possessed by the post-conviction court are apparent from the record. *See* T.R.E. 103(a)(2) (offers of proof). The court did not err in excluding the evidence, and the Petitioner is not entitled to relief on this basis.

## II

## Ineffective Assistance of Counsel

The Petitioner contends that the post-conviction court erred in denying relief on his claim that trial counsel provided ineffective assistance because she did not argue that the State failed to offer sufficient proof that the victim was less than thirteen years old at the time of the attempted rape of a child offense. *See* T.C.A. § 39-13-522(a) (2014) ("Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age."). The State contends that the court did not err. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." *Id.* § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its

factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In its order denying relief, the post-conviction court stated:

As to the allegations that [trial counsel] was ineffective for failure to object to certain questions and statements made by the prosecution that allegedly misstated the testimony and the proof, the Court finds that it is not clear that these statements and questions were misstatements of the testimony or the proof. After a review of the trial transcript, the allegation that the State mischaracterized the victim's answer [about her age] . . . and there was a failure to object, is conceivable [sic] true. However, [after] a review of the proof as a whole as well as trial counsel's testimony of the trial strategy she pursued, it appears that this failure to object would not

-10-

have affected the outcome of the trial. [Trial counsel] testified that her trial strategy was to emphasize that there was no corroborating evidence that any of these events happened. There were no witnesses, there was no physical evidence, there was no DNA. The only proof was the testimony of a young child that disclosed weeks after the last alleged incident occurred. [Trial counsel] testified that arguing over when [the victim] turned 13 was not part of her strategy, only arguing that none of the events ever happened. The court finds that this was a strategic decision made by defense counsel that does not appear to be unreasonable. Furthermore, a review of the proof establishes that there was evidence to support the jury's finding that the victim was under 13 when the child rape incident was supposed to have occurred. The Court of Criminal Appeals was also satisfied that the evidence was sufficient to establish that the victim was under the age of 13 to support the conviction for Criminal Attempt Rape of a Child.

As to the allegations that trial counsel was ineffective for not objecting to the State's closing argument that the proof was uncontroverted that the victim was 12 at the time of the offense, the Court finds that this proof was uncontroverted since the defense theory was that the acts did not happen no matter what the age of the victim was. The failure to object was not ineffective based on the defense theory and therefore [the issue] is without merit.

Upon review, we conclude that the evidence does not preponderate against the post-conviction court's findings. Trial counsel testified that, after consulting with and preparing for trial with the Petitioner, she chose to pursue a defense that the facts failed to show the Petitioner committed the alleged offenses. A strategy of arguing that the facts failed to show that the Petitioner had sexually penetrated the victim did not turn on a question of the age of the victim. Counsel's informed strategic decisions are entitled to deference. *See Adkins,* 911 S.W.2d at 347; *see also Pylant*, 263 S.W.3d at 874. We note, as well, that although the Petitioner was charged with rape of a child, counsel's strategy proved somewhat successful in that he was acquitted of that offense and was convicted of the lesser included offense of attempted rape of a child. The Petitioner has not shown that the post-conviction court erred in concluding that clear and convincing evidence was not shown that counsel's performance was deficient.

In any event, in the previous appeal, this court analyzed the sufficiency of the evidence to support the Petitioner's conviction of attempted rape of a child and stated, "Viewing the evidence in the light most favorable to the State, the victim's testimony established that the defendant made the victim undress, put his penis on the victim's anus, and 'bumped' his penis against her anus without penetrating her *when she was twelve years old*." *See Eliot Russell*, 2015 WL 5813679, at *5 (emphasis added). This court's

previous determination regarding the sufficiency of the evidence of the victim's age speaks further to the lack of benefit to be had from an objection to the State's characterization of the evidence of the victim's age. The Petitioner has not shown that the post-conviction court erred in concluding that the Petitioner failed to prove by clear and convincing evidence that prejudice existed. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE